BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
(415) 436-7700

Counsel for Defendant MICHAEL YOUNG

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>MICHAEL YOUNG,<br><br>               Defendant. | No. CR 07-559 JSW<br><br>**NOTICE OF MOTION AND MOTION TO SUPPRESS FRUITS OF UNLAWFUL SEARCH AND SEIZURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS**<br><br>Date:   October 11, 2007<br>Time:  2:30 p.m.<br>Court: The Honorable Jeffrey S. White |

BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
(415) 436-7700

Counsel for Defendant MICHAEL YOUNG

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-559 JSW |
| | ) | |
| Plaintiff, | ) | **NOTICE OF MOTION AND MOTION** |
| | ) | **TO SUPPRESS FRUITS OF UNLAWFUL** |
| | ) | **SEARCH AND SEIZURE;** |
| v. | ) | **MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN SUPPORT OF** |
| | ) | **MOTION TO SUPPRESS** |
| MICHAEL YOUNG, | ) | |
| | ) | Date:  October 11, 2007 |
| Defendant. | ) | Time:  2:30 p.m. |
| _____ | ) | Court: The Honorable Jeffrey S. White |

TO: UNITED STATES ATTORNEY, PLAINTIFF; AND SCOTT N. SCHOOLS, UNITED STATES ATTORNEY, NORTHERN DISTRICT OF CALIFORNIA; AND ALLISON MARSTON DANNER, ASSISTANT UNITED STATES ATTORNEY;

PLEASE TAKE NOTE that on Thursday, October 11, 2007 at 2:30 pm, in the courtroom of the Honorable Jeffrey S. White, or as soon thereafter as the motion may be heard, defendant Michael Young will move this Court to suppress all fruits of an unlawful search and seizure. This motion is based on the following memorandum of points and authorities, the constitution of the

CR- 07-559 JSW; *United States v. Young*
Motion to Suppress Fruits of Unlawful Search             1

United States, all relevant statutory authority and case law, and such argument as the Court will entertain at the motion hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant Michael Young is charged in a one count indictment with violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. The firearm was recovered as a fruit of a warrantless search of the Hilton hotel room that Mr. Young was residing in on August 5-6, 2007. Mr. Young now moves this Court to suppress the evidence found by San Francisco police as a result of that search.

Ordinarily, an evidentiary hearing is necessary to resolve factual issues relevant to a motion to suppress evidence. Mr. Young submits that this case presents an unusual situation, as the facts averred in the complaint readily explain the illegality of the search. As such, Mr. Young moves this Court to grant his motion on the papers. In the event the Court determines that further fact-finding is necessary, Mr. Young hereby requests an evidentiary hearing.

### STATEMENT OF FACTS

On August 5-6, 2007, Mr. Young was staying as a guest at the Hilton hotel in the Tenderloin district of San Francisco in room number 13575. *See* Declaration of Michael Young, attached hereto as Exhibit A, at ¶ 2. Late in the evening of August 5, Hilton hotel security began to suspect that Mr. Young had stolen items out of a different room, for which he allegedly had been accidentally given an electronic key. *See* Affidavit of Michael Hamilton ("Hamilton Affidavit") in Support of Criminal Complaint, attached hereto as Exhibit B, at ¶ 4; *see also* Security Incident Report of Hilton Hotel Security Officer Hicks (" Hicks Report"), attached hereto as Exhibit C, at Bates MY 10.

While Mr. Young was not present, SO Hicks and Hilton Hotel Security Officer Carr ("SO Carr") searched room 13575 and discovered a loaded gun inside a backpack in the room. *See* Hamilton Affidavit, Exhibit B at ¶ 5; *see also* SO Hicks Report, Exhibit C; *see also* Security

1  Report of Hilton Hotel Security Officer Carr (" Carr Report"), attached hereto as Exhibit D.  The

2  security officers returned the gun to its original position and waited for Mr. Young to return to

3  the room. *Id.*

4        Mr. Young returned to the hotel in the early morning of August 6, only to find his room

5  had been placed on Electronic Lock Out ("ELO"). *See* Hamilton Affidavit, Exhibit B at ¶ 5.

6  When Mr. Young went to the front desk to figure out what was wrong with his room, Hilton

7  security notified the San Francisco police. *Id.*; *see also* Hicks Report, Exhibit C.   SFPD Officer

8  Michael Koniaris responded. *Id.*  Hilton security "asked Koniaris to detain Young." Hamilton

9  Affidavit, Exhibit B, at ¶ 5.  Hilton security officers Hicks and Carr then informed Officer

10  Koniaris about the loaded weapon in hotel room 13575.  *See* Hicks Report, Exhibit C; *see also*

11  Carr Report, Exhibit D.  The security officers then escorted Officer Koniaris up to room 13575.

12  *See* Carr Report, Exhibit D; *see also* Hicks Report, Exhibit C.

13        There are three different versions of what happened next, but all versions describe a

14  slightly different rendition of an unlawful, warrantless search of Young's hotel room.  According

15  to Inspector Hamilton:

16        "[The security guards] asked Koniaris to accompany them to room 13575,
the room registered to Young.  Officer Koniaris advised Hicks and Carr he could
17  not enter and search Young's room.  Officer Koniaris waited outside as the two
security officers entered Young's room.  SO Hicks removed a blue backpack from
18  the closet.  Hicks placed the backpack on the bed and unzipped the outer pocket.
That pocket contained the handgun that Hilton staff had previously discovered.
19  Officer Koniaris then entered Young's room and saw the gun in the unzipped
pocket of the backpack.  Officer Koniaris seized the backpack and handgun. He
20  then arrested Young."

21  Hamilton Affidavit, Exhibit B at ¶¶ 6-9.

22        According to SO Carr, "I escorted our 3B [Officer Koniaris] up to the room and accessed

23  it for him.  Once Officer Koniaris checked the bags and found the items, he took Mr. Young and

24  placed him under arrest." Carr Report, Exhibit D.  According to SO Hicks, "we went back to the

25  room with Officer Koniaris, and he waited outside for ADOS Carr to tell him he could enter the

26  room.  When Koniaris entered the room we showed him the gun.  Michael Young had to [sic]

backpack in his room [sic] Officer Koniaris took both bags and we closed the door and put it back on ELO." Hicks Report, Exhibit C.

**ARGUMENT**

**I.    As a Hotel Guest, Mr. Young Had A Reasonable Expectation of Privacy in Hilton Hotel Room 13575**

Mr. Young submits an affidavit in support of this motion that on August 5 and August 6, 2007, he was an overnight guest at the Hilton hotel in room 13575. *See* Young Affidavit, Exhibit A. It is well established in the law that overnight guests have a reasonable expectation of privacy in their temporary shelter because "staying overnight in another's house is a long standing social custom that serves functions recognized as valuable by society . . . .we are at our most vulnerable when we are asleep because we cannot monitor our safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.*" Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990).

**II.    By All Factual Accounts, Officer Koniaris Entered Mr. Young's Hotel Room and Seized the Firearm Without a Warrant**

**A.    The Government Bears the Burden of Justifying a Warrantless Search**

It is undisputed that Officer Koniaris did not have a search warrant to enter and search Mr. Young's hotel room. Warrantless searches by law enforcement are presumptively unreasonable. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001). The Supreme Court has long held that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 589-90 (1980). Because the search of Mr. Young's hotel room was undertaken without a search warrant, it is presumptively illegal. *See United States v. Katz*, 389 U.S. 347 (1967). "Any exception to the Fourth Amendment warrant requirement must be proven

by a preponderance of evidence, and *this burden is upon the government.*" *United States v. Linn*, 880 F.2d 209, 214 (9th Cir. 1989) (emphasis added).

In this case, the government cannot demonstrate that Officer Koniaris' actions entering Mr. Young's hotel room are justified by an exception to the warrant requirement. The government's burden to establish this exception is heavy, and "cannot be satisfied by speculation about what may or might have happened." *United States v. Howard*, 828 F.2d 552, 555 (9th Cir. 1987). Should the government fail to meet its burden to establish a lawful basis for the search, all evidence found as a result of the unlawful search must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484-87 (1963).

**B.    No Valid Exception to the Warrant Requirement Exists in this Case.**

Based on the facts alleged by its own witnesses in the attached reports, the government cannot meet its heavy burden to establish a valid exception to the warrant requirement with respect to the search of Mr. Young's hotel room. By all accounts, Officer Koniaris "crossed the threshold" and entered Mr. Young's validly rented hotel room without a warrant, irregardless of the actions of the security officers (explored *infra*). Quite simply, it is inexcusable why the San Francisco Police Department failed to obtain a warrant to search the hotel room. No exceptions to the warrant requirement account for the officer's failure to do so.

**1.    Inspector Hamilton's Affidavit Purporting to Establish "Plain View" Does Not Legalize the Officer's Warrantless Entry Because Officers are Only Entitled to Rely on the Plain View Doctrine When They Have Previously Established a Lawful Presence in a Private Place**

Inspector Hamilton's odd affidavit reads as if Hilton security guards Hicks and Carr attempted to create some sort of "plain view" scenario to try to justify the warrantless entry. *See* Hamilton Affidavit, Exhibit B, at ¶ 7-9. From the affidavit, it appears that Officer Koniaris was

aware that he could not lawfully search the hotel room. *Id* at ¶ 7. Instead, he waited by the hotel room door with the door open while Hilton security guards entered, collected the backpack, put it on the bed, opened the pocket, and "displayed" the firearm for Officer Koniaris to see. *Id.* at ¶ 8. Once Officer Koniaris saw the gun, he apparently believed he was entitled to enter the room to seize the gun that was purportedly in "plain view" due to the security officer's actions. *Id.* at ¶ 9. Unfortunately for Officer Koniaris, his seemingly clever effort to construct "plain view" does not comport with federal caselaw or the Fourth Amendment.

Once lawfully established in a private space, it is true that officers are entitled to seize contraband that is in "plain view." However, plain view does not justify a seizure of an object *until a search is already lawfully in progress*. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The bedrock principle of the plain view doctrine is that plain view, standing alone, does not justify an officer's entry into a private space unless he is in possession of a warrant, or lawfully present in the space due to some other legitimate exception to the warrant requirement. "The [plain view] doctrine serves to supplement the prior justification – whether it be a warrant for another object . . .or some other legitimate reason for being present." *Id.* at 466. Absent lawful cause to enter, plain view simply doesn't apply. "[P]lain view is never enough to justify the warrantless seizure of evidence . . . no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Id.* at 468.

Nor does the fact that Officer Koniaris saw a firearm through the open door change the constitutional calculus. "Even when the object [in plain view] is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." *Id.* Here, Officer Koniaris had no warrant and no lawful reason to enter the hotel room. The evidence of the firearm must be suppressed.

CR- 07-559 JSW; *United States v. Young*
Motion to Suppress Fruits of Unlawful Search           6

### 2.     **Exigent Circumstances Did Not Exist**

Similarly, the government is hard-pressed to try to justify the warrantless entry of Officer Koniaris through the exigent circumstances doctrine. "Exigent circumstances are those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search [] until a warrant could be obtained." *United States v. Gooch*, 6 F.3d 673, 679 (9th Cir. 1993). The government bears the burden to show "particularized evidence" of a real emergency before a warrantless search is upheld. *See United States v. Tarazon*, 989 F.2d 1045, 1049 (9th Cir. 1993).

Here, the Hilton hotel security guards had already searched the room containing the firearm and placed it on "electronic lockdown" prior to the arrival of the officer or Mr. Young, thus preventing anyone from leaving or entering the room, with the firearm secured and locked inside. *See* Hamilton Affidavit, Exhibit B, at ¶ 5. There was no emergency that justified Officer Koniaris' failure to obtain a warrant prior to seizing the firearm in this case.

### C.     **Even Assuming, *Arguendo*, that Officer Koniaris Did Not Physically Enter Mr. Young's Hotel Room and Seize the Firearm, The Hilton Security Guards Acted at the Direction of the Officer, With the Intent to Assist Law Enforcement**

Under all renditions of the facts presented to this Court through the reports of the government's own witnesses, it is clear that Officer Koniaris physically entered Mr. Young's hotel room and seized the gun, without obtaining a warrant to enter the room. *See* Hamilton Affidavit, Exhibit B at ¶ 9 ("Koniaris then entered Young's room and saw the gun in the unzipped pocket of the backpack. Officer Koniaris then seized the backpack and handgun"); *see also* Hicks Report, Exhibit C at MY 10 ("Koniaris entered the room, and we showed him the gun"); *see also* Carr Report, Exhibit D at MY 11 ("I escorted our 3B up to the room and accessed

it for him"). It is Mr. Young's position that this action constitutes a warrantless entry and subsequent unlawful seizure of evidence, regardless of the corresponding actions of the security guards.

However, even assuming, *arguendo*, that the government was able to somehow establish that Officer Koniaris did not physically enter the room to seize the gun, as the complaint and the reports state, and that the actual search and seizure was conducted instead by the Hilton security officers, Mr. Young's Fourth Amendment rights were still violated by the search. Although searches by private actors are not ordinarily unlawful, "the Fourth Amendment does prohibit unreasonable intrusions by private individuals who are acting as government instruments or agents." *See United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1993)(citations omitted). The two part test in the Ninth Circuit to determine whether private actors, such as the Hilton security guards in this case, are "acting as a government instrument for Fourth Amendment purposes" is: "(1) whether the government knew of an acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends." *Id.* (citing *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982)).

Here, the undisputed factual record set forth establishes the fact that the Hilton security guards searched Mr. Young's room a second time on August 6, 2007 under the watchful eye of a state police officer. Exhibits B-D establish the fact that (1) SFPD Police Officer Koniaris, a government agent, knew and acquiesced in the fact that Hilton security guards were rifling through Mr. Young's belongings to retrieve the gun discovered earlier, and (2) the security guards were acting for the sole purpose of securing evidence for the police for the purpose of assisting the police in the arrest and prosecution of Mr. Young. Each report or affidavit relays the fact that Officer Koniaris was standing outside the door of the hotel room while security

guards searched and retrieved the firearm.  *See* Hamilton Affidavit, Exhibit B, at ¶ 7 (stating that Officer Koniaris actually informed the security guards that he couldn't search Mr. Young's room, but stood outside the door as the guards conducted the search instead); *see also* Hicks Report, Exhibit C ("Officer Koniaris waited outside for ADOS Carr to tell him he could enter the room"); *see also* Carr Report, Exhibit D ("I escorted [Officer Koniaris] up to the room and *accessed it for him*")(emphasis omitted).   The Carr Report in particular is evidence of the fact that the sole reason security guards returned to the hotel room with the police officer was to open the hotel door and retrieve the weapon *for the officer* and provide the officer with a reason to arrest Mr. Young.  This is government directed action in its purest form.

The only reasonable legal conclusion this Court can draw from the facts stated in the affidavit and reports is that Officer Koniaris attempted to use the security guards to retrieve a weapon that he believed he had no constitutional right to retrieve.  Otherwise, there would have been no reason for the officer to tell the security guards that "he could not search Young's room".  Hamilton Affidavit, Exhibit B at ¶ 7.  At the time the firearm was retrieved from the room, the security guards and the police were acting in tandem, attempting to elude the requirement that the officer seek and obtain a warrant.  There is no excuse for this type of sloppy police practice, and the Fourth Amendment does not permit the police to evade constitutional protections in this manner.  This Court should not tolerate anything less from local law enforcement than full compliance with well established police procedures grounded in the constitution.  The evidence obtained from room 13575 against Mr. Young must be suppressed.

### III.  By All Factual Accounts, Officer Koniaris Subsequently Arrested Mr. Young Without A Warrant and the Arrest Lacked Probable Cause

It is similarly undisputed that the San Francisco Police Department did not obtain a

CR-07-559 JSW; *United States v. Young*
Motion to Suppress Fruits of Unlawful Search          9

warrant to detain or arrest Mr. Young. "The government bears the burden to show that a warrantless seizure does not violate the Fourth Amendment." *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988). The Fourth Amendment requires that the arrest be supported by probable cause. *Id.* at 1298. Here, it was not.

According to the reports discussed above, Office Koniaris arrested Mr. Young *after* seizing the loaded firearm from his hotel room. *See* Hamilton Affidavit, Exhibit B, at ¶ 9; see also Hicks Report, Exhibit C (indicating Mr. Young was placed under arrest after the police seized the firearm); *see also* Carr Report, Exhibit D ("Once Officer Koniaris checked the bags and found the items, he took Mr. Young and placed him under arrest."). Yet, possessing a firearm in a hotel room is not a crime. Although the Hamilton Affidavit, Exhibit B at ¶ 5 alleges that "Young told Officer Koniaris he had been to prison", this statement alone, in combination with the firearm, does not create probable cause for arrest, assuming such a statement was made. The crime charged prohibits an individual from possessing a firearm after having *been convicted of a felony*, not after serving time in custody. The four corners of the affidavit and the supporting reports thus fail to establish probable cause for Mr. Young's arrest. As such, Mr. Young respectfully requests the Court to suppress all evidence against him that stemmed from his arrest, including all statements he made to police officers subsequent to arrest.

//

//

//

//

//

CR- 07-559 JSW; *United States v. Young*
Motion to Suppress Fruits of Unlawful Search          10

**CONCLUSION**

The San Francisco police should have obtained a warrant to seize the firearm in question from Mr. Young's hotel room. There is no reasonable explanation for its failure to do so, much less an explanation that amounts to an established exception to the warrant requirement. Accordingly, Mr. Young respectfully requests this Court to suppress the fruits of the unlawful search and seizure on August 6, 2007, including the firearm and each of his statements to police. Mr. Young respectfully requests an evidentiary hearing in the event this Court determines that further factual findings are necessary.

Dated:       September 6, 2007

                                Respectfully submitted,

                                BARRY J. PORTMAN
                                Federal Public Defender

                                    /S/

                                ELIZABETH M. FALK
                                Assistant Federal Public Defender