1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  ALLISON MARSTON DANNER (CSBN 195046)
   Assistant United States Attorney
5
     450 Golden Gate Avenue, Box 36055
6    San Francisco, California 94102-3495
     Telephone: (415) 436-7144
7    FAX: (415) 436-7234
     Email: allison.danner@usdoj.gov
8
   Attorneys for the United States
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13

14
   UNITED STATES OF AMERICA,        )   No. CR 07-0559 JSW
15                                   )
          Plaintiff,                 )   UNITED STATES' OPPOSITION TO
16                                   )   DEFENDANT'S MOTION TO SUPPRESS FRUITS
       v.                            )   OF SEARCH
17                                   )
   MICHAEL YOUNG,                    )   Date:   October 11, 2007
18                                   )   Time:  2:30 p.m.
          Defendant.                 )   The Honorable Jeffrey S. White
19  _____ )

20

21

22

23

24

25

26

27

28

UNITED STATES' OPPOSITION
CR 07-0559 JSW

1

**TABLE OF CONTENTS**

2    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3    I. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4    II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5          A.    The Fourth Amendment Does not Apply to the Initial Entry by Hilton Security
                into Young's Room, Because Hilton Employees are Wholly Private Actors  . . . 5
6

7          B.    Young's Eviction From his Hotel Room Extinguished Any Legitimate
                Expectation of Privacy he Possessed in Room 13575 . . . . . . . . . . . . . . . . . . . . . 7

8          C.    Steps Taken by a Private Actor to Show the Police a Gun Previously Found In a
                Bag Previously Opened Is Not a Search Under the Fourth Amendment . . . . . . . 9
9
                1.    Young Had No Legitimate Expectation of Privacy in a Bag Already
10                    Opened . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11                2.    There was no Search of the Backpack Under the Fourth Amendment
                       Because Hilton Security Employees are not State Actors and Officer
12                     Koniaris Never Searched the Backpack . . . . . . . . . . . . . . . . . . . . . . . . 12

13                3.    Officer Koniaris Could Lawfully Enter Young's Room to Seize the Gun
                       in Plain View Without a Warrant After Young's Right to an Expectation
14                     in the Room Had Been Extinguished by his Eviction . . . . . . . . . . . . . 13

15         D.    Even if this Court Finds a Violation of the Fourth Amendment, Suppression of
                 the Gun is Inappropriate Because It would Inevitably Have Been discovered by
16               the Police . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

17         E.    Defendant's Request to Suppress Post-Arrest Statements Does not Adequately
                 Identify the Statements in Question  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
18

19    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Minnesota v. Carter*, 525 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nix v. Williams*, 467 U.S. 431 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Allen*, 106 F.3d 695 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Bautista*, 362 F.3d 584 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Burnette*, 698 F.2d 1038 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Cleaveland*, 38 F.3d 1092 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . 7, 12

*United States v. Cunag*, 386 F.3d 888 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Davis*, 332 F.3d 1163 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Dorais*, 241 F.3d 1124 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Fultz*, 146 F.3d 1102 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Haddad*, 558 F.2d 968 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Jacobson*, 466 U.S. 109 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*United States v. Miller*, 152 F.3d 813 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Miller*, 688 F.2d 652 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*United States v. Mithun*, 933 F.2d 631 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Reed*, 15 F.3d 928 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Rousseau*, 257 F.3d 925 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Seljan*, F.3d, No. 05-50236, 2007 WL 2302371, at *7
     (9th Cir. Aug 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Silva*, 247 F.3d 1051 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Smythe*, 84 F.3d 1240 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Snowadzki*, 723 F.2d 1427 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . 6

*United States v. Walther*, 652 F.2d 788 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . 6, 12

*United States v. Young*, 153 F.3d 1079 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Walter v. United States*, 447 U.S. 649 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1

**FEDERAL STATUTES**

2    18 U.S.C. § 922(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

On August 28, 2007, a grand jury indicted Michael Young for possessing a firearm after having sustained a felony conviction, in violation of 18 U.S.C. § 922(g).  On September 6, 2007, the defendant filed a motion to suppress the loaded firearm found in his hotel room, claiming that the seizure of the weapon violated his rights under the Fourth Amendment to the United States Constitution.  The United States respectfully submits that this motion should be denied.

Hilton hotel security personnel, looking for belongings stolen from another hotel guest, found the gun that is the subject of defendant's motion.  Before they found the gun in a backpack in defendant's room, Hilton staff had no contact with the police with regard to this case.  Indeed, they did not call the police until four hours after they had discovered the weapon.  The search of defendant's room by these private actors does not implicate the Fourth Amendment.  By the time that Hilton security informed the San Francisco Police Department (SFPD) of the gun, several hours had elapsed and Young had been evicted from his hotel room.  Whatever legitimate expectation of privacy Young may have had in the room or the backpack had been extinguished by the time that the SFPD had any contact with this case.  When an SFPD officer finally did go up to the defendant's hotel room, Hilton security entered the room and opened the backpack containing the gun.  Having previously found the gun in the same bag as part of a lawful private search, this subsequent opening of the bag does not constitute a search subject to the Fourth Amendment.  For these reasons, this case presents no violation of the Fourth Amendment, and the United States respectfully asks this Court to deny defendant's motion to suppress.

**I. FACTS**

The gun in this case was found during an investigation into a theft at the Hilton Hotel in San Francisco.  On August 5, 2007, at around 5:30 pm, James Johnson, a guest at the Hilton staying in room 13572, reported that a laptop computer, an iPod, and other items had been stolen from his room. (Exhibit 1, Declaration of Dirk Carr ¶3 [hereinafter "Carr Declaration"].)  Dirk Carr, Assistant Director of Security and Safety at the Hilton, was on duty when Johnson first reported the theft.  After reviewing hotel records, Carr determined that another guest, Michael Young, had mistakenly been registered to Johnson's room and been given keys to the room after

1    Johnson had checked in. (Carr Declaration ¶4; Exhibit 2, Declaration of William Marweg ¶8

2    [hereinafter "Marweg Declaration"].)  Young was also registered to another room at the Hilton,

3    room 13575.

4        Carr called Young on the phone in room 13575.  Carr asked Young which room he was

5    staying in, and Young replied that he was staying in room 13575.  (Carr Declaration ¶5.)  Carr

6    asked Young if he could come up and speak with him later, and Young replied that he could.

7    (Carr Declaration ¶5.)

8        At approximately 8:30 p.m. that evening, Dirk Carr went up with Hilton Security

9    Supervisor Roger Hicks to rooms 13572 and 13575 to look for Johnson's missing property and

10   to speak with Young. (Carr Declaration ¶6.)  Room 13572 (formerly Johnson's room) was now

11   vacant. (Carr Declaration ¶6.)  Young had left room 13575 by the time that Carr and Hicks

12   knocked on his door.  Carr and Hicks entered room 13575 using hotel master security keys and

13   discovered two backpacks.  They found one backpack under the bed and one blue backpack in

14   the closet.  Inside the blue backpack, they found numerous checkbooks belonging to people other

15   than Michael Young.  (Exhibit 3, Declaration of Roger Hicks ¶4 [hereinafter "Hicks

16   Declaration"].)  They also found a gun in the front pocket of the blue backpack.  On the bed,

17   they found an empty key package for room 13572.  (Carr Declaration ¶6; Hicks Declaration ¶4.)

18   Johnson's missing belongings were not in the room.  (Carr Declaration ¶6.)

19       Dirk Carr then called the Director of Security at the Hilton, Bill Marweg, at Marweg's

20   home.  (Marweg Declaration ¶2.)  Marweg instructed Carr to leave the gun in the room, since,

21   pursuant to hotel policy, Hilton security are not permitted to handle weapons.  (Marweg

22   Declaration ¶11.)  Marweg directed Carr to call the San Francisco Police Department (SFPD) in

23   the morning to report the gun.  (Marweg Declaration ¶11.)  Marweg also instructed Carr to place

24   the room on electronic lockout, which disables the room lock from opening to any key other than

25   a special "electronic lockout" key.  (Marweg Declaration ¶4.)

26       Hilton security believed that Young, having stolen the items from the hotel, would not be

27   returning to the Hilton (Marweg Declaration ¶12.)  Due to the lateness of the hour, they intended

28   to report the theft in the morning (Marweg Declaration ¶11.)   Carr, Marweg, and Hicks knew

1    that, in the event that Young did return, he would not be able to return to his room, since they

2    had placed it on electronic lockout.

3         Around 11:45 p.m. on August 5, 2007, Young returned to the Hilton.  Young attempted

4    to enter room 13575 but could not open the lock with his key, because the room had been placed

5    on electronic lockout. (Marweg Declaration ¶14.)  Roger Hicks, Security Supervisor at the

6    Hilton, was notified by the front desk that Young had returned.  (Hicks Declaration ¶5.)  Hicks

7    contacted SFPD Officer Michael Koniaris, who was working an overtime detail in front of the

8    hotel.  (Exhibit 4, Declaration of Michael P. Koniaris ¶3.)  As Officer Koniaris entered the hotel

9    lobby, Hicks asked him to detain Young.  Hicks told Officer Koniaris that Young was suspected

10   of committing a burglary in the hotel.  (Koniaris Declaration ¶3.)

11        Officer Koniaris went outside to run a check of San Francisco police records on Young.

12   The information indicated that Young had been arrested on numerous felony and misdemeanor

13   charges.  (Koniaris Declaration ¶4.)  When Koniaris returned to the lobby, he asked Young if he

14   had ever been to prison, and Young replied that he had.  (Koniaris Declaration ¶4.)  Koniaris

15   spoke with Young for about twenty or thirty minutes in the lobby on a range of topics, including

16   family matters.  During this entire period, Koniaris was not informed about the gun found in

17   Young's room.  (Koniaris Declaration ¶5.)

18         Some time later, Hicks told Officer Koniaris about the gun found in Young's room.

19   Koniaris and Hicks then took Young to the Hilton security office, where Koniaris searched

20   Young for the first time and handcuffed him to a bench in the Hilton security office.  (Koniaris

21   Declaration ¶6.)

22        Dirk Carr, who had already gone home for the evening, arrived back at the Hilton.  (Carr

23   Declaration ¶8.)  Carr and Hicks took Officer Koniaris up to room 13575.  (Carr Declaration ¶8;

24   Hicks Declaration ¶7.)   Officer Koniaris told Hicks and Carr that he could not search the room.

25   (Koniaris Declaration ¶7.)  Hicks or Carr unlocked room 13575 while Officer Koniaris waited in

26   the hallway.  (Hicks Declaration ¶7.)  Hicks and Carr left the door to room 13575 open, and

27   Officer Koniaris could see inside the room.  (Koniaris Declaration ¶8.)  Hicks took the backpack

28   containing the gun out of the closet, put it on the bed, and unzipped the front pocket.  (Koniaris

UNITED STATES' OPPOSITION
CR 07-0559 JSW                              4

1   Declaration ¶9.)[1]  Koniaris could see the gun in the backpack pocket from the hallway.

2   (Koniaris Declaration ¶9.)  One he saw the gun, Koniaris entered the room and took possession

3   of the bag containing the gun.   (Koniaris Declaration ¶10.)  At no time did Officer Koniaris

4   instruct Hicks or Carr to open the backpack to show him the gun.  (Carr Declaration ¶10; Hicks

5   Declaration ¶8; Koniaris Declaration ¶11.)  At no time did Officer Koniaris search the bag.

6   (Hicks Declaration ¶8; Koniaris Declaration ¶10.)  After finding the gun, Koniaris arrested

7   Young on suspicion of being a felon in possession of a gun and transported him to the police

8   station.  (Koniaris Declaration ¶12.)

9                                    **II.  ARGUMENT**

10          The Fourth Amendment does not prohibit all warrantless discovery of criminal activity.

11  The strictures of the Amendment apply only to searches conducted by state actors in places

12  where an individual enjoys a legitimate expectation of privacy.  *Minnesota v. Carter*, 525 U.S.

13  83, 88 (1998); *Walter v. United States,* 447 U.S. 649 (1980).  The defendant–not the

14  Government–bears the burden of demonstrating that the search in this case violated his

15  legitimate expectation of privacy.  *United States v. Silva*, 247 F.3d 1051, 1055 (9th Cir. 2001).

16  These twin threshold requirements, state action and legitimate expectation of privacy, are fatal to

17  Young's contention that the discovery of the gun in room 13575 offends the United States

18  Constitution.

19          **A.    The Fourth Amendment Does not Apply to the Initial Entry by Hilton
               Security into Young's Room, Because Hilton Employees are Wholly Private
20             Actors.**

21          The Fourth Amendment's protection against unreasonable searches and seizures "is

22  wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private

23  individual not acting as an agent of the Government or with the participation or knowledge of

24  any governmental official."  *United States v. Jacobson*, 466 U.S. 109, 113 (1984) (internal

25

26  ────────────────

27          [1]Hicks cannot remember whether he or Carr took the backpack out of the closet and
        unzipped the pocket.  (Hicks Declaration ¶7.)  All of the percipient witnesses agree that either
        Hicks or Carr took the backpack out of the closet, put it on the bed, and unzipped the front
28      pocket.

1  citations omitted).  In addition, "[t]he burden of establishing government involvement in a

2  private search rests on the party objecting to the evidence." *United States v. Snowadzki,* 723

3  F.2d 1427, 1429 (9th Cir. 1984); *United States v. Young,* 153 F.3d 1079, 1080 (9th Cir. 1998).

4  Young's legitimate expectation of privacy in room 13575 was never violated by a state actor

5  during the period in which he enjoyed that expectation.

6      Hilton security first entered Young's room around 8:30 p.m., after they had begun to

7  suspect that Young had stolen Johnson's belongings from room 13572.  Hilton staff initially

8  questioned Young on the phone, at which time Young denied having entered room 13572.

9  Hilton staff told Young that they were coming up to speak with him.  When they later arrived at

10  the room, no one answered their knock.  Indeed, Young had apparently left the hotel.

11      After determining that no one was in room 13575, Hilton security entered the room using

12  a master key.  In the course of looking for Johnson's stolen belongings, they found the backpack

13  containing the loaded gun.  Before this moment, Hilton security had no reason to suspect that

14  Young had a gun.  At no time during this series of events were Hilton staff in contact with the

15  police.  Security officers Carr and Hicks were merely internally investigating the reported theft

16  of the belongings of a Hilton guest, in conformity with their internal procedures.  This search

17  was conducted by a private party, not a state actor.

18      In certain limited cases, a search by a private party may be deemed state action when a

19  high degree of coordination exists between that private party and the state.  *United States v.*

20  *Walther,* 652 F.2d 788, 791 (9th Cir. 1981).  This kind of coordination was wholly absent when

21  Hilton staff discovered the gun in Young's room.  In inquiring whether a search by a private

22  party implicates the Fourth Amendment, the Ninth Circuit employs a two-part test.  The test asks

23  (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether

24  the party performing the search intended to assist law enforcement efforts or further his own

25  ends." *United States v. Cleaveland,* 38 F.3d 1092, 1093 (9th Cir. 1995).

26      The discovery of the gun in Young's hotel room by Hilton security fails both prongs of

27  the *Cleaveland* test.  SFPD did not become involved in the case until hours after Hilton security

28  had searched the room and found the gun.  When they entered the room, Hilton security was

attempting to locate the stolen items belonging to its guest.  They had made no contact at all with law enforcement, and it was far from certain that they would contact the police at all.  At this point, Hilton security had no idea that Young had a gun in his room.  They were simply looking for Johnson's missing computer and iPod.  The Ninth Circuit has found that even some advance contact with law enforcement does not necessarily place a private search under the rubric of the Fourth Amendment.  *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982).  In this case, there was no contact whatsoever with the police prior to, or even hours after, the entry by Hilton security into room 13575 and their discovery of the gun.[2]

**B.     Young's Eviction From his Hotel Room Extinguished Any Legitimate Expectation of Privacy he Possessed in Room 13575**

Young bears the burden of demonstrating a legitimate expectation of privacy in the room *at the time* that a state actor, or a private actor working closely with a state actor, searched the premises.  *United States v. Dorais,* 241 F.3d 1124, 1129 (9th Cir. 2001).  In examining whether a hotel guest enjoys a legitimate expectation of privacy in a hotel room, the Ninth Circuit has described "the critical determination" as whether "management had justifiably terminated [the defendant's] control of the room through private acts of dominion."  *United States v. Bautista,* 362 F.3d 584, 590 (9th Cir. 2004).

The Hilton management in this case justifiably terminated Young's control of room 13575 long before it first contacted the police.  After their initial entry into Young's room, Hilton security strongly suspected that Young had stolen the items from Johnson's room.  They reached this conclusion based on their review of the lock interrogation reports, on Young's suspicious departure from the hotel when Young knew they wanted to speak with him, on the fact that Young had an empty key packet with Johnson's room number on it in his room, on the checks belonging to multiple individuals in Young's backpack, and on the gun found in Young's

---

[2] Even assuming, *arguendo,* that Hilton security had a dual purpose in searching the room–namely, recovering the stolen property and assisting law enforcement if evidence of a crime surfaced–this fact would not convert their search into one that falls under the protection of the Fourth Amendment.  Hilton's freestanding, independent motive of trying to locate the missing belongings of a legitimate guest demarcates the search of Young's room as a quintessentially private act.  *Cleaveland*, 38 F.3d at 1093.

own room.  In response to these suspicious indications, Hilton security took affirmative steps to evict Young from his room.  Most importantly, they placed his room on "electronic lockout," disabling his key.   These affirmative steps of dispossession extinguished any legitimate expectation of privacy that Young may have had in room 13575.[3]  It is irrelevant that Young did not consent to his eviction from the room.  *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir. 1977).   As attested in the Declaration of Bill Marweg, who has been the Director of Security at the Hilton San Francisco for the past fifteen years, these actions were fully in conformity with Hilton policies and procedures.

Only when Young unexpectedly returned to the hotel that evening and notified Hilton staff that he could not enter room 13575, did Hilton security first contact the police and ask that they detain Young.  These facts are strikingly similar to those described in *United States v. Cunag*, 386 F.3d 888 (9th Cir. 2004).  In that case, a hotel clerk registered the defendant to a room at the hotel.  Later, the hotel clerk became suspicious of the documents the defendant had used to check in and suspected that the defendant was engaging in credit card fraud.  The hotel manager then locked the defendant out of his room and notified the local police.  The police entered the room without a warrant after the manager had locked the room.   The Ninth Circuit concluded that the warrantless entry by the police did not offend the Fourth Amendment, because the defendant had no legitimate expectation of privacy in the hotel room once hotel staff had locked him out of the room and contacted the police.  *Cunag*, 386 F.3d at 895.  This reasoning applies with equal force in Young's case.  By the time that Officer Koniaris entered Young's room in the early hours of August 6, 2007, Young retained no legitimate expectation of privacy in the room.

---

[3]Other courts have also found that locking a hotel guest out of his room constitutes the key hallmark for the termination of a legitimate expectation of privacy. *E.g. United States v. Allen*, 106 F.3d 695, 699-700 (6th Cir. 1997) (finding action by the manager to deadbolt the room "divested [the defendant] of his status as an occupant of the room, and concomitantly terminated his privacy interest in its contents").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Steps Taken by a Private Actor to Show the Police a Gun Previously Found In a Bag Previously Opened Is Not a Search Under the Fourth Amendment

Although defendant has not raised the issue in his motion to suppress, it is possible that he will contend he possessed an expectation of privacy in the backpack containing the gun *after* his eviction from the hotel room.[4]  This argument, if made, would also fail.  Young's legitimate expectation of privacy in the backpack was fully extinguished after it was first opened by Hilton security around 8:30 p.m.  In addition, Hilton security's subsequent opening of the backpack did not constitute state action and, in any event, did not exceed the scope of the prior, private search.  Furthermore, at no time did Officer Koniaris himself search the backpack.  Officer Koniaris merely took possession of the backpack and its contents after he saw the gun lying in plain view in the open pocket.  For these reasons, the second opening of the backpack and the exposure of the gun do not constitute a search within the meaning of the Fourth Amendment.

### 1.    Young Had No Legitimate Expectation of Privacy in a Bag Already Opened.

State actors usually may not examine the contents of a closed container absent a warrant to search.  *United States v. Fultz*, 146 F.3d 1102, 1104 (9th Cir. 1998).  In this case, however, Hilton security opened the backpack and found the gun while looking for property stolen from a hotel guest.  As described above, Hilton employees Carr and Hicks took this action hours before they first contacted the police.  Carr and Hicks were acting wholly as private actors, pursuing the interests of and pursuant to the policies of the Hilton hotel.  Four or five hours later, Carr and Hicks went back up to room 13575 with Officer Koniaris, reopened the backpack, and showed Officer Koniaris the gun.  The reopening of the backpack in the early hours of August 6 was not a search within the meaning of the Fourth Amendment, because Young no longer possessed a legitimate expectation of privacy in a bag that had previously been opened.

This case is controlled by *United States v. Jacobson*, 466 U.S. 109 (1984).  In *Jacobson*,

---

[4]Presumably, defendant will contend that his expectation of privacy in the backpack derives from the fact that the backpack is his.  Absent such a showing, he cannot claim any legitimate expectation of privacy in the bag at any time during the course of events at issue in this case.

1    a supervisor at a FedEx office at the Minneapolis Airport opened a damaged package. Inside,

2    he found plastic bags containing white power. Suspicious that the powder was drugs, he

3    phoned the police. The FedEx employee then put the plastic bags back inside the package.

4    When the police arrived, they took the plastic bags out of the container, opened the plastic bags,

5    and performed a field test on the powder. *Id.* at 111. Under these facts, the Supreme Court

6    found no violation of the Fourth Amendment. The Court first concluded that "the initial

7    invasions of respondents' package were occasioned by private action. . . . Whether those

8    invasions were accidental or deliberate, and whether they were reasonable or unreasonable, they

9    did not violate the Fourth Amendment because of their private character." *Id.* at 115. The

10   Court then articulated the test applicable to the opening of the package and removal of the bags

11   by the police: "[t]he additional invasions of respondents' privacy by the government agent must

12   be tested by the degree to which they exceeded the scope of the private search." *Id.* The Court

13   concluded that the defendants' expectation of privacy in the package and the bags inside it had

14   "already been frustrated," and therefore the police actions did not constitute a search within the

15   meaning of the Fourth Amendment. *Id.* at 117-118. It is worth noting that the defendants in

16   *Jacobson* were wholly unaware that their expectation of privacy had been extinguished by the

17   private actor at the time the private actor opened the bag, because all of the events described

18   above occurred at the FedEx processing facility at the airport. *Id.* at 111.

19        Lower courts have applied the *Jacobson* test, and the rationale underlying it, in a variety

20   of contexts. Particularly relevant to this case, the Eighth Circuit has found no Fourth

21   Amendment violation where a hotel valet found a gun and a silencer inside a guest's car and

22   then relocked the car's trunk. Hotel employees subsequently opened the car trunk and looked

23   inside two more times, each time relocking the trunk. The valet supervisor later called the

24   police. When the police arrived, hotel employees unlocked the car trunk, opened it, and showed

25   the police the gun. Relying on *Jacobson*, the court found that the purely private actions of the

26   hotel employees did not implicate the Fourth Amendment. *United States v. Mithun*, 933 F.2d

27   631, 634 (8th Cir. 1991). In addition, the court found that the fact that hotel employees

28   unlocked the car's trunk and showed the police the gun was constitutionally unproblematic.

The officer's viewing of the gun

> went no further . . . than the three prior private searches by the hotel employees.
> . . [T]he property that had been the subject of the private search was still in the
> possession of the private party that made that search.  Under these
> circumstances, the fact that the valet manager assisted [the officer] in duplicating
> the prior private searches did not revive a Fourth Amendment privacy interest
> that had previously expired.

*Id.*  Similarly, in another case the court upheld a warrantless entry by police officers into a

guest's room in a halfway house after the halfway house employees had entered the room and

found drugs.  "To be a Fourth Amendment search, a governmental intrusion must infringe on a

legitimate expectation of privacy.  Because a private search frustrates such an expectation, an

ensuing police intrusion that stays within the limits of the private search is not a search for

Fourth Amendment purposes."  *United States v. Miller,* 152 F.3d 813, 815 (8th Cir. 1998).  The

Ninth Circuit has recognized that requiring a warrant for an item previously searched does not

advance the privacy goals of the Fourth Amendment.  "The contents of an item previously

searched are simply no longer private."  *United States v. Burnette*, 698 F.2d 1038, 1049 (9th

Cir. 1983).

Hilton security staff opened Young's blue backpack around 8:30 p.m. and found the

gun.  Because it is Hilton policy that its security staff cannot handle guns, Marweg Declaration

at ¶11, Carr and Hicks then put the gun back inside the backpack, closed it, and returned the

backpack to the closet.  In addition, they placed the room on electronic lockout, so that only

they would be able to reopen the room.  These actions extinguished Young's legitimate

expectation of privacy in both the room and the backpack.

Hours later, Hicks notified Officer Koniaris of the gun he and Carr had found in the bag.

When Hicks and Carr took Officer Koniaris upstairs and showed him the gun, they were not

providing the officer with any information other than what they had already disclosed to him as

a result of their prior, private search.  Although it would have violated Hilton security policy, as

a constitutional matter Hicks and Carr could have removed the gun and brought it down to the

police station without running afoul of the Fourth Amendment.  That they left it in the room and

asked the police to come retrieve it was in conformity with Hilton policies, public safety, and

1    the Fourth Amendment.  The reopening of the bag and the showing of the gun to the officer was

2    not a search within the meaning of the Fourth Amendment, because Young's legitimate

3    expectations of privacy had long expired.

4               **2.    There was No Search of the Backpack Under the Fourth**
                 **Amendment, Because Hilton Security Employees are not State**
5               **Actors and Officer Koniaris Never Searched the Backpack**

6          Alternatively, even if this Court determines that Young retained a legitimate expectation

7    of privacy in the bag, it was never searched by a state actor.  For the reasons described above in

8    Part II(A), Hilton employees are private actors.  Officer Koniaris likely knew that Hicks or Carr

9    was going to show him the gun when they went up to the room, and Hilton employees intended

10   to give the gun to Koniaris.  *See United States v. Cleaveland,* 38 F.3d 1092, 1093 (9th Cir.

11   1995).  This desire to give the officer the gun, however, was not based solely on an intent to

12   assist law enforcement.  Instead, Hicks and Carr were acting pursuing to Hilton's policy for the

13   disposal of weapons found in guest rooms.  This policy is designed to "provide a reasonable

14   degree of safety and security for guests, customers and team members coming onto company

15   and/or hotel property."  (Hilton Hotels Corp. Standard Practice Instructions, Tab A, Marweg

16   Declaration, at 1 [hereinafter "Hilton Gun Policy"].)  This independent, private motive

17   highlights that Hicks and Carr were not acting simply as a proxy for the police.

18          In addition, Hilton staff–not Officer Koniaris–took the initiative to show Officer

19   Koniaris the gun.  Hilton employee Roger Hicks first called Officer Koniaris and asked him to

20   come to the lobby, omitting to tell Koniaris about the gun for at least thirty minutes.  (Koniaris

21   Declaration ¶4.)  Hicks and Carr later informed Koniaris about the gun and asked Koniaris to go

22   upstairs with them.  Koniaris waited outside the room but did not participate in their actions in

23   any way.  The mere presence of a police officer during a private search does not implicate the

24   Fourth Amendment.  *United States v. Walther,* 652 F.2d 788, 791 (9th Cir. 1981).  "In some

25   affirmative way, the police must instigate, orchestrate, encourage or exceed the scope of the

26   private search to trigger application of the Fourth Amendment."  *United States v. Smythe,* 84

27   F.3d 1240, 1243 (10th Cir. 1996).  Officer Koniaris's passive observation of Hicks and Carr

28   opening the bag and exposing the gun falls far short of the participation necessary to trigger the

1    Fourth Amendment.  At no time did Officer Koniaris himself open the bag or search inside it.

2

3    **3.    Officer Koniaris Could Lawfully Enter Young's Room to Seize the Gun in Plain**
      **View Without a Warrant After Young's Right to an Expectation in the Room Had**
4    **Been Extinguished by his Eviction.**

5        Officer Koniaris first saw the gun from the hallway of the hotel.  As a common space

6    shared with hundreds of hotel guests and employees, Young certainly had no legitimate

7    expectation of privacy in the hallway.  Having been asked to enter the hotel by hotel employees,

8    Officer Koniaris was entitled to stand outside the room.  Once Officer Koniaris saw the gun, he

9    was entitled to seize it as evidence of a crime.  Most notably, Officer Koniaris had probable

10   cause, based on the information the Hilton security employees had told him, to believe that

11   Young had stolen items from another guest at the hotel.  The incriminatory nature of a gun in

12   room 13575 under such circumstances is unequivocal.

13       In addition, it was constitutionally permissible for Officer Koniaris to seize the

14   backpack containing the gun.  "Evidence in 'plain view' may be seized without a warrant, so

15   long as the initial intrusion leading to the view is lawful and the incriminatory nature of the

16   evidence is immediately apparent to the officers."  *United States v. Rousseau,* 257 F.3d 925,

17   930 (9th Cir. 2001); *see also United States v. Seljan,* No. 05-50236, 2007 WL 2302371, at *7

18   (9th Cir. Aug 14, 2007)*.*   Officer Koniaris saw the gun from the hallway, entered the room, and

19   then seized the backpack.  For the reasons described above, the gun was highly incriminating to

20   Young.  Furthermore, because Young no longer had any legitimate expectation of privacy in the

21   room, Officer Koniaris had the right to enter it without a warrant.

22       As defendant notes, Officer Koniaris waited outside of Young's hotel room until he saw

23   the gun in plain view in the open pocket in the bag.  Because Young no longer had an

24   expectation of privacy in the room, Koniaris's hesitation to enter the room was constitutionally

25   unnecessary.  But is hardly fair to accuse Koniaris of  "attempting to use the security guards to

26   retrieve a weapon that he believed he had no constitutional right to retrieve" (Defendant's

27   Motion to Suppress at 9.)  Officer Koniaris was more cautious than he needed to be, but surely

28   this is the kind of behavior we hope the police will exhibit in what they perceive to be a close

1    case. Koniaris knew that individuals may have a legitimate expectation of privacy in hotel

2    rooms, and he was acting out of an abundance of caution until Hilton security retrieved the gun

3    from where they had previously found it. It defies common sense and the prophylactic purpose

4    of the exclusionary rule to suppress the gun on the grounds that Officer Koniaris elected the

5    course of discretion. *Accord United States v. Miller*, 688 F.2d 652, 658 (9th Cir. 1982).

6          There is no evidence that any individual involved in the events of August 5 and 6 at the

7    Hilton Hotel, with the notable exception of the defendant himself, attempted to undercut

8    anyone's legitimate right to privacy. Hilton security, employed by the Hilton hotel and having

9    made no contact with the police, entered Young's room only after they suspected he had stolen

10   property from another guest. In looking for those stolen items, they stumbled upon Young's

11   gun. The security employees then locked the room, intending to turn the gun over to the police

12   in the morning. Only when Young unexpectedly returned did they call the police. They

13   eventually showed the police officer the gun they had already found in the regular course of

14   their duties. This unexceptional and unobjectionable chain of events raises no Fourth

15   Amendment concerns.

16          **D.    Even if this Court Finds a Violation of the Fourth Amendment, Suppression
               of the Gun is Inappropriate Because It Would Inevitably Have Been**
17             **Discovered by the Police.**

18          Even if this Court were to find that a Fourth Amendment violation occurred in this case,

19   suppression is not an appropriate remedy. The gun inevitably would have been discovered by

20   the police. *Nix v. Williams,* 467 U.S. 431, 444 (1984); *United States v. Davis,* 332 F3d 1163,

21   1171 (9th Cir. 1993). It is Hilton's policy to notify the police of all guns found at the Hilton

22   suspected of having a connection to unlawful activity. (Hilton Gun Policy at IV(D).) Even if

23   Officer Koniaris had not seen the gun and seized Young's backpack in the early morning of

24   August 6, 2007, the firearm would inevitably had been discovered by the police. Hilton

25   security intended to report the gun to SFPD the morning after they found the gun. Since the

26   room was on electronic lockout, there was no possibility of Young surreptitiously removing the

27   gun before the police's inevitable arrival. It is inconceivable that they would have given the

28   gun back to Young once they believed that he had robbed the room of a fellow guest. Since

UNITED STATES' OPPOSITION
CR 07-0559 JSW                                14

1   Hilton employees knew where the gun was located, it was only a matter of time before it would

2   be in the hands of the San Francisco police.

3

4       **E.    Defendant's Request to Suppress Post-Arrest Statements Does not
                 Adequately Identify the Statements in Question**

5       At the very end of his motion, Young asks this Court to suppress "all evidence against

6   him that stemmed from his arrest, including all statements he made to police officers

7   subsequent to arrest." (Defendant's Motion at 10.)  Defendant does not identify what

8   statements he is referring to, which are not mentioned at all in defendant's statement of facts, or

9   the circumstances under which they were made.  The only basis for suppression articulated is

10  the allegedly unlawful arrest, which is legally irrelevant.  This vague request for relief makes it

11  impossible for the Government to respond adequately to this argument.  Given the total absence

12  of relevant facts, the United States will not respond to this argument until adequately explained

13  by the defendant.  Should the defendant choose to pursue this argument, the Government

14  requests the opportunity to file a Surreply.

15

16                              **CONCLUSION**

17      For the foregoing reasons, the United States respectfully requests that the Court deny the

18  defendant's motion to suppress the firearm in this case.

19

20  DATED: September 20, 2007

21

22                                      Respectfully submitted,

23

24                                      SCOTT N. SCHOOLS
                                        United States Attorney

25

26                                          /s/

27                                      ALLISON MARSTON DANNER
                                        Assistant United States Attorney

28

UNITED STATES' OPPOSITION
CR 07-0559 JSW                       15

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she is an employee of the office of the United

States Attorney, Northern District of California and is a person of such age and discretion to be

competent to serve papers.  The undersigned certifies that she caused copies of

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**
**FRUITS OF SEARCH**

in the case of **UNITED STATES V. MICHAEL YOUNG, CR 07-0559 JSW** to be served on

the parties in this action, by placing a true copy thereof in a sealed envelope, addressed as

follows which is the last known address:

**Elizabeth Falk, Esq.**
**Federal Public Defender's Office**
**450 Golden Gate Avenue**
**San Francisco, CA 94102**

  X   (By Personal Service), I caused such envelope to be delivered by hand to the person or
         offices of each addressee(s) above.

_____  (By Facsimile), I caused each such document to be sent by Facsimile to the person or
         offices of each addressee(s) above.

_____  (By Mail), I caused each such envelope, with postage thereon fully prepaid, to be placed
         in the United States mail at San Francisco, California.

_____ (By Fed Ex), I caused each such envelope to be delivered by FED EX to the address
         listed above.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:     September 20, 2007

_____
          /s/
RAWATY YIM
United States Attorney's Office

UNITED STATES' OPPOSITION
CR 07-0559 JSW                                    16