# EXHIBIT

# 2

**EXHIBIT  2**

1  SCOTT N. SCHOOLS (SCSBN 9990)
   United States Attorney

2

3  BRIAN J. STRETCH (CASBN 163973)
   Chief, Criminal Division

4  ALLISON MARSTON DANNER (CASBN 195046)
   Assistant United States Attorney

5
   450 Golden Gate Avenue, Box 36055
6  San Francisco, California 94102
   Telephone: (415) 436-7144
7  Fax: (415) 436-7234
   Email: allison.danner@usdoj.gov

8
   Attorneys for the United States
9

10
                          UNITED STATES DISTRICT COURT
11
                        NORTHERN DISTRICT OF CALIFORNIA
12
                            SAN FRANCISCO DIVISION
13

14
   UNITED STATES OF AMERICA,           )      No. CR-07-0559-JSW
15                                      )
          Plaintiff,                    )      DECLARATION OF WILLIAM MARWEG
16                                      )      IN SUPPORT OF UNITED STATES'
   v.                                   )      OPPOSITION TO DEFENDANT'S
17                                      )      MOTION TO EXCLUDE EVIDENCE
   MICHAEL YOUNG,                       )
18                                      )
          Defendant.                    )
19  _____)

20       I, William F. Marweg, declare:

21       1.  I am the Director of Security and Safety at the Hilton Hotel San Francisco, located at 333

22  O'Farrell Street in San Francisco, California (hereinafter "the Hilton"). I have been employed in

23  this position for fifteen years. My responsibilities include oversight of all security and safety

24  matters at the Hilton, including guest safety and investigations into thefts committed at the hotel.

25       2.  On August 5, 2007, at approximately 9:00 pm, I was informed by Dirk Carr, Assistant

26  Director of Safety and Security at the Hilton, that a hotel guest had reported a theft from his

27  room. Carr informed me that another guest had been given the keys to that room by mistake and

28
   DECLARATION OF WILLIAM MARWEG
   [CR 07-0559 JSW]

1   that Carr believed that the second guest had stolen the items. Carr also told me that a gun had
2   been found in the room of the guest suspected of committing the theft.

3       3. In the course of my investigation into this theft, I have reviewed the hotel records from
4   August 5 and 6, 2007. As part of my duties as Director of Safety and Security, I am familiar with
5   these records, the information they contain, and the systems that produced them. I have regularly
6   used the systems described below. If called as a witness, I could testify competently to the facts
7   stated in this declaration.

8       4. The Hilton Hotel uses a software system called "OnQ" to manage the hotel check in and
9   reservation process. The Hilton manages room keys and room security through the "Saflok"
10  system. With Saflok, room keys are made by an encoder at the hotel front desk. Each key is
11  assigned a number. The locks on the guest-room doors have a small computer unit embedded in
12  them. Saflok allows Hilton security to determine which keys have been used to open the locks
13  on that door by running a "lock interrogation report." Saflok also allows a room to be placed on
14  "electronic lockout," which means the door cannot be opened by any key other than a special
15  "electronic lockout key" issued only to Hilton security staff. Only electronic lockout keys can be
16  used to trigger and to disable an electronic lockout.

17      5. The OnQ records from August 5, 2007 indicate that Michael Young checked into the
18  Hilton at 2:03 pm, using a reservation that had previously been made in his name through the
19  Travelocity website. He was assigned room 13575 by the front desk staff.

20      6. The OnQ records from August 5, 2007 indicate that James Johnson checked into the
21  Hilton at 2:36 pm. He was registered to room 13572. Due to an error made by the front-desk
22  clerk, room 13572 was not registered as "occupied" in the OnQ system after room 13572 had
23  been assigned to Johnson.

24      7. At 3:27 pm, a caller to 1-800-HILTONS (Hilton's national reservations number) added
25  Michael Young as a guest to a reservation for the Hilton San Francisco made earlier through the
26  Travelocity website in the name of Melissa Matsudo.

27      8. The OnQ records for August 5, 2007 indicate that, at 3:44 pm, Michael Young registered
28

DECLARATION OF WILLIAM MARWEG
[CR 07-0559 JSW]

2

1   for the room reserved under the name of Melissa Matsudo and to which he had been added by the
2   caller to 1-800-HILTONS. Due to the desk clerk error made earlier, room 13572 was listed in
3   the Hilton computer system as "vacant ready" when it had already been assigned to James
4   Johnson. Young was then registered into room 13572, even though Johnson was also registered
5   to that room.

6       9.   The lock interrogation reports from August 5, 2007 for room 13572 show that a key for
7   room 13572 that we believe was issued to Michael Young was used to enter room 13572 around
8   3:30 pm. I also believe that the clock on the computer inside the lock for room 13572 was
9   around twenty minutes slow on August 5, 2007, which is not uncommon for the Saflok system.

10      10.   When Dirk Carr called me at home around 9:00 pm on August 5, 2007, he told me about
11  the mixup with the keys for room 13572. Carr also told me about the empty key packet to room
12  13572 and the gun that were both found in Young's room, 13575.

13      11.   When I was informed by Dirk Carr about the gun, I instructed him to leave the gun in the
14  room and to lock Young out of the room . Given the late hour, I instructed Carr to inform the
15  police in the morning of the theft and of the discovery of the gun. It is the written policy of the
16  Hilton, as recorded in Hilton Hotel Corporation's Standard Practice Instructions attached to this
17  Declaration as Tab A, that hotel security personnel cannot handle any weapons. Instead, security
18  personnel are instructed to inform the police of such weapons in all cases.

19      12.   In my experience, individuals who steal items from the hotel do not then return to the
20  hotel, and that was my expectation in this case.

21      13.   The lock interrogation reports from August 5, 2007 for room 13575 show that the room
22  was first placed on electronic lockout at 8:37 pm. It was also placed on electronic lockout at 9:10
23  pm on August 5 and at 1:55 am on August 6, 2007.

24      14.   Lock interrogation reports from August 5, 2007 for room 13575 show that Young
25  attempted to use keys issued to him to enter the room around 11:48 pm. The key issued to
26  Young did not work, because the room had been placed on electronic lockout.

27      15.   It is the policy of the Hilton that items abandoned in a hotel room are taken to lost and

28
DECLARATION OF WILLIAM MARWEG
[CR 07-0559 JSW]

3

1  found. If the abandoned items appear to be contraband, then it is the policy of the Hilton that
2  security staff should notify the San Francisco Police Department (SFPD) and ask that SFPD take
3  possession of them. It is the Hilton's written security policy that weapons found in guest rooms
4  after a guest has checked out must be notified to the local police. The policy indicates that the
5  police must come to the hotel and take possession of the weapon. Weapons found in guest
6  rooms are never returned to guests suspected of committing a crime but instead are notified to the
7  police.

8    16. It is the policy of the Hilton that guests suspected of committing a crime in the hotel
9  should be evicted from the hotel. The lockout of Michael Young from room 13575 was in
10  accordance with this policy.

11

12    I declare under penalty of perjury, according to the laws of the United States, that the
13  foregoing is true and correct to the best of my recollection and belief. Executed this 2 0 day of
14  September, 2007 at San Francisco, California.

WILLIAM F. MARWEG

15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF WILLIAM MARWEG
[CR 07-0559 JSW]

4

TAB
A

# HILTON HOTELS CORPORATION
## Standard Practice Instructions
### ** CONFIDENTIAL - FOR INTERNAL USE ONLY **

| | |
|---|---|
| **SUBJECT:** | Weapons Policy |
| **DATE ISSUED:** | August 1996 |
| **PAGE:** | 1    **OF:**    5 |
| **S.P.I. CODE:** | RM-S-20 |
| **REFERENCES:** | Security/Fire Safety Policy Manual, Section S-2, April 6, 1983; Hotels Division SOP-GEN-01, September 30, 1990 |
| **RESPONSIBLE OFFICE:** | Security |
| **DISTRIBUTION:** | Corporate Officers, General Managers, Corporate Director Safety & Security, Legal Department Attorneys, Director of Leasing, Director of Public Relations, Director of Employment & Recruitment, Regional Directors of Human Resources, Directors of Safety & Security, Comptrollers, Directors of Human Resources |

I.   **PURPOSE**

The purpose of this policy is to provide guidance to our team members with respect to the possession and use of weapons by guests, contract security firms, other independent contractors, concessionaires and their respective employees and contractors while on company and/or hotel property and for team members while on company and/or hotel property and when conducting company business at any location.

II.   **INTENT**

The intent of this policy is to provide a reasonable degree of safety and security for guests, customers and team members coming onto company and/or hotel property.

III.   **POLICY**

Except as indicated below team members, guests, contract security firm employees (including but not limited to, off duty law enforcement officers or any other independent contractors), tenants and concessionaires and their respective employees and contractors  are prohibited from transporting, possessing or using firearms, explosives,

# HILTON HOTELS CORPORATION
## Standard Practice Instructions

### ** CONFIDENTIAL - FOR INTERNAL USE ONLY **

| | |
|---|---|
| **SUBJECT:** | Weapons Policy |
| **DATE ISSUED:** | August 1996 |
| **PAGE:** | 2    **OF:**   5 |
| **S.P.I. CODE:** | RM-S-20 |

or other dangerous devices (collectively, "weapons"), regardless of an authorized permit to carry same, while on company and/or hotel property. Team members are further prohibited from transporting, possessing or using weapons while conducting company business at any location. Specific exceptions to this policy are as follows:

A.    Sworn federal, state or local law enforcement officers while on official business and, when off duty, when required to carry firearms in the jurisdiction by statute, ordinance or rule.

B.    Designated team members specifically assigned to Casino security duties are permitted to carry authorized and licensed weapons only while on duty on company and/or hotel property. The Vice President Gaming Surveillance and Internal Security is responsible for the appropriate designation and training of such designated team members, and obtaining appropriate licenses for weapons and permits for designated team members.

## IV.    IMPLEMENTATION

A.    Locating weapons within guest rooms

In the event a team member in the course of his/her duties observes or finds a weapon in a guest room, the following procedures apply:

1.    Immediately leave the guest room, lock the guest room door and notify Security.

2.    If the weapon is an explosive or suspected explosive device, the team member shall follow the procedures for bomb threat, see SPI RM-S-5.

3.    Security shall E-key the guest room without disturbing the weapon and leave a note on the door for the guest to call Security upon returning to the room.

# HILTON HOTELS CORPORATION
# Standard Practice Instructions

## ** CONFIDENTIAL - FOR INTERNAL USE ONLY **

| | |
|---|---|
| **SUBJECT:** | Weapons Policy |
| **DATE ISSUED:** | August 1996 |
| **PAGE:** | 3   **OF:**   5 |
| **S.P.I. CODE:** | RM-S-20 |

4.     The responding Security Officer shall complete a Security Incident Report describing the circumstances.

5.     The responding Security Officer is to immediately notify the Director of Safety and Security and the General Manager of the incident.

6.     Except as noted in Sec. IIIB., above, no team member is to handle a weapon under any circumstances.

7.     When the guest makes contact with Security, he/she is to be advised that the room will not be cleaned or serviced while the weapon is left in the room unattended.

8.     If a weapon is found or observed in a guest room after a guest has checked out, the guest room is to be secured as indicated in 3 above. The local police are to be notified and requested to come onto company or hotel property and take possession of the weapon.

9.     When the guest returns, he/she is to be informed that company policy prohibits possession of weapons on company and/or hotel property and offered a secured location on company or hotel property, if available, for the storage of such weapon until the time of his/her departure.

B.     Locating weapons outside of guest rooms

In the event a team members observes or finds a weapon outside of a guest room, he/she shall treat explosive or suspected explosive devices under procedures for bomb threat, see SPI RM-S-5. Weapons shall not be handled by team members under any circumstances and the presence or knowledge that weapons are present in the workplace shall immediately be communicated by the team member to the Director of Safety and Security and the General Manager. The immediate area is to be secured and the local police are to be

# HILTON HOTELS CORPORATION
## Standard Practice Instructions

### ** CONFIDENTIAL - FOR INTERNAL USE ONLY **

| | |
|---|---|
| **SUBJECT:** | Weapons Policy |
| **DATE ISSUED:** | August 1996 |
| **PAGE:** | 4    **OF:**    5 |
| **S.P.I. CODE:** | RM-S-20 |

notified and requested come onto company or hotel property and take possession of the weapon.

C.    Weapon security

Any guest who requests that a weapon be secured by the hotel shall first be required to affirm that the weapon is unloaded, which shall be recorded in the Security Incident Report. The guest shall be informed that team members will not handle the weapon. The weapon shall be placed by the guest in a safe deposit box or other designated secure space approved by the General Manager. The normal safe deposit box forms (see SPI RM-S-1) are to be completed. In addition, the safe deposit box form and Security Incident Report shall include a complete description including serial number, if any, of the weapon. The guest is to be instructed on how and where to claim his/her weapon upon check out. A Security officer is to escort the guest upon departure, confirm the departure and note same in the Security Incident Report. If a guest requests that a weapon be stored that does not fit into the designated secure space, the guest is to be informed that a storage space for the weapon is not available and that the guest must make other arrangements for storage of the weapon off company and/or hotel property.

D.    Suspected unlawful activity

If the circumstances surrounding a found or observed weapon suggests the potential for unlawful activity, the local police are to be informed by the Director of Safety and Security or the General Manager.

E.    Lease terms and conditions

New and renewed leases are to reflect the prohibitions outlined in this policy.

# HILTON HOTELS CORPORATION
## Standard Practice Instructions

### ** CONFIDENTIAL - FOR INTERNAL USE ONLY **

| | |
|---|---|
| **SUBJECT:** | Weapons Policy |
| **DATE ISSUED:** | August 1996 |
| **PAGE:** | 5     **OF:**     5 |
| **S.P.I. CODE:** | RM-S-20 |

F.    <u>Licensed Premises</u>

In some states that permit qualified citizens to carry weapons, it is nonetheless unlawful to carry a weapon onto premises where alcohol is sold or served, including areas on company or hotel property such as bars, restaurants, hospitality suites, meeting and banquet rooms ("licensed premises"). Each hotel must check with the city, country or state alcoholic beverage licensing agency to determine their specific requirements. In instances where team members observe a guest with a weapon on licensed premises, they are to be trained to notify a member of management who is to advise the guest of this policy. Should the guest refuse to remove the weapon from the licensed premises, management is to seek the assistance of the local police to remove the guest from the licensed premises.

G.    <u>Posting of Signs</u>

Some states require that private businesses which ban weapons on their premises post signs to that effect. Each hotel is to verify with the appropriate authorities whether specific language is required for such signs. Should there be no specific language, the following language is to be used:

> ***"Carrying a weapon on these premises is prohibited and violators may be subject to arrest for criminal trespass under applicable state law."***

V.    **RELATED STANDARD PRACTICE INSTRUCTIONS**

See RM-S-16 Unarmed Personnel Policy and RM-S-17 Contract Security Services.