1   BARRY J. PORTMAN
    Federal Public Defender
2   ELIZABETH M. FALK
    Assistant Federal Public Defender
3   19th Floor Federal Building
    450 Golden Gate Avenue
4   San Francisco, CA 94102
    (415) 436-7700
5
    Counsel for Defendant MICHAEL YOUNG
6

7
                    IN THE UNITED STATES DISTRICT COURT
8
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10
    UNITED STATES OF AMERICA,          )   No. CR 07-559 JSW
11                                      )
                        Plaintiff,      )   **DEFENDANT'S REPLY**
12                                      )   **MEMORANDUM IN SUPPORT OF**
                                        )   **MOTION TO SUPPRESS**
13          v.                          )
                                        )   Date:   October 25, 2007
14                                      )   Time:  2:30 p.m.
    MICHAEL YOUNG,                      )   Court: The Honorable Jeffrey S. White
15                                      )
                        Defendant.      )
16   _____)

17

18

19

20

21

22

23

24

25

26

1  BARRY J. PORTMAN
   Federal Public Defender
2  ELIZABETH M. FALK
   Assistant Federal Public Defender
3  19th Floor Federal Building
   450 Golden Gate Avenue
4  San Francisco, CA 94102
   (415) 436-7700
5
   Counsel for Defendant MICHAEL YOUNG
6

7
                IN THE UNITED STATES DISTRICT COURT
8
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10

   UNITED STATES OF AMERICA,          )    No. CR 07-559 JSW
11                                     )
                    Plaintiff,         )    **DEFENDANT'S REPLY**
12                                     )    **MEMORANDUM IN SUPPORT OF**
                                       )    **MOTION TO SUPPRESS**
13          v.                         )
                                       )    Date:   October 25, 2007
14                                     )    Time:   2:30 p.m.
   MICHAEL YOUNG,                      )    Court:  The Honorable Jeffrey S. White
15                                     )
                    Defendant.         )
16  _____  )

17
                         **INTRODUCTION**
18
         The government's opposition incorporates a new claim that Mr. Young was "evicted"
19
   from the Hilton hotel on the night in question.  The evidence now before the Court indicates that
20
   this justification for the unlawful search of Mr. Young's hotel room was created after the fact.
21
   As such, Mr. Young moves this Court to grant his motion on the papers.  In the event the Court
22
   determines that further fact-finding is necessary, Mr. Young hereby requests an evidentiary
23
   hearing in connection with the government's new "eviction" theory.
24
                       **STATEMENT OF FACTS**
25
         The government now disputes Mr. Young's expectation of privacy in the hotel room at
26

1   issue, and claims that Mr. Young was "evicted" from his hotel room despite the evidence that; 1)
2   all his belongings remained in the hotel room; 2) he had not taken any steps to check out of the
3   hotel; 3) no stolen property or *per se* illegal material was found in Mr. Young's room; and 4)
4   possession of a firearm is not grounds for eviction from the hotel, *according to Hilton's own*
5   *policy. See* Exhibit 2A, Weapon Policy of Hilton, at 2-3, Section IVA 1-9.

6          This claim of "eviction" is asserted for the first time, absent evidentiary support, in the
7   Declaration of William Marweg, Director of Security at the Hilton Hotel. *See* Government
8   Opposition, Exhibit 2, at ¶ 16.   The government submits no policy statement from Hilton
9   indicating that "guests suspected of committing a crime in the hotel should be evicted from the
10  hotel."  Nor was there firm evidence that Mr. Young had committed any crime at the time of the
11  search and seizure.  None of the reports produced in initial discovery support the government's
12  claim that Mr. Young was "evicted"; nor is there any declaration in the government's opposition
13  from any manager of the hotel who claims to have the authority to evict guests.  In sum, the
14  evidence before the Court indicates that Mr. Young was not evicted from room 13575 at the time
15  the firearm was seized, nor that there was any lawful cause for the hotel to terminate his rental
16  contract.  Mr. Young maintained an expectation of privacy in the items located in room 13575 at
17  the time of the search and seizure.

18         The government also disputes that the warrantless second search of Mr. Young's room
19  was conducted by security guards at the behest of police, despite undisputed evidence that the
20  search was conducted after Officer Koniaris "was informed [by his superior] that [he] could not
21  enter Young's hotel room to search it but that Hilton security guards staff could enter a guest
22  room." Gov. Oppn., Exhibit 4 ¶ 7. On the whole, Officer Koniaris' declaration strengthens,
23  rather than weakens Mr. Young's argument that the security guards should be considered state
24  actors for Fourth Amendment purposes in connection with the second search.  As the
25  government's arguments to the contrary do not fit the facts of this case, the evidence seized by
26  Officer Koniaris without a warrant must be suppressed.

**ARGUMENT**

**I.    MR. YOUNG MAINTAINED A REASONABLE EXPECTATION OF PRIVACY IN HILTON HOTEL ROOM 1-3575[1] THROUGHOUT THE SECOND SEARCH AND SEIZURE OF THE FIREARM**

**A.    Mr. Young was not "Evicted" for Fourth Amendment Purposes**

The government first argues that Mr. Young had no reasonable expectation of privacy in his hotel room at the time of the second search of his hotel room, and claims that Mr. Young was "evicted" because his room was placed on electronic lockdown. This claim is belied by several key facts. First, no one ever informed Mr. Young that he was "evicted" from his hotel room. Second, all of Mr. Young's belongings remained in the hotel room. Third, Mr. Young was well within the rental period he had legitimately paid for to lease the hotel room. Fourth, in *none of the initial discovery reports* did any member of the Hilton hotel staff claim that Mr. Young was "evicted." In contrast, Assistant Director of Security Dirk J. Carr writes "I had graveyard supervisor Hicks and Officer Aguilar went to 1-3572, 1-3575 [Young's room] and 13576 to put the rooms on ELO, until we could figure out what belongs to what room." Opening Motion, Exhibit D. The room was subsequently placed on ELO after the firearm was discovered, in accordance with Hilton Hotel policy. *See id.; see also* Gov. Oppn. at Exhibit 2A, p.2 (stating that in the event that a weapon is found in a guest room, the security staff should "E-key" the guest room for safety reasons and the guest should be told to remove the weapon and/or offered a secured location on the property to store the weapon). Hilton's own policy belies the

---

[1] Without citation, the government argues that Mr. Young must specifically claim an expectation of privacy in the bag at issue in additional to claiming an expectation of privacy in the hotel room. Defense counsel has uncovered no caselaw that supports the government's proposition. It belies common sense, for example, that a homeowner resident defendant need claim specific expectations of privacy in chests of drawers or closets within the home to have standing to contest the validity of a search of those areas. Moreover, here the bag itself was found in the hotel room, and its discovery is a fruit of the search. The bag itself, as well as its contents would need to be suppressed as a fruit of an unlawful search if Mr. Young is successful on this motion. As such, Mr. Young has validly claimed an expectation of privacy in the contents of the room, including the bags, the closets, and the drawers located therein.

1  government's contention that Mr. Young was "evicted" because a firearm was located in the

2  room.  As its own policy explains, discovery of a firearm in a Hilton hotel room is **not** grounds

3  for eviction from hotel.

4         **B.    The Cases Cited by the Government are Inapposite to the Instant Case**

5         The facts in this case are far different than any case cited by the government for the

6  proposition that Mr. Young's expectation of privacy was extinguished by the hotel staff.  First, in

7  *United States v. Haddad*, 558 F.2d 968 (9th Cir. 1977), the Ninth Circuit simply found that a

8  defendant had no reasonable expectation of privacy with respect to a room from which he had

9  checked out of after informing the management that "he did not want any belongings he might

10  have left in the room."  *Id.* at 975.  Here, Mr. Young had not checked out; his belongings

11  remained in the room, and under all accounts he still reasonably believed he had a right to occupy

12  it at the time of the search.  In *United States v. Dorias*, 241 F.3d 1124, (9th Cir. 2001), the Ninth

13  Circuit conducted an intensely fact-driven inquiry to determine that the defendant had overstayed

14  his rental period and thus, his expectation of privacy was extinguished at the time the hotel room

15  was searched.  *Id.* at 1130.  Here, Mr. Young was well within the rental period and the rule of

16  *Dorais* does not apply.

17         In *United States v. Bautista*, 362 F.3d 584 (9th Cir. 2004),  the defendant had used a false

18  credit card to rent a hotel room.  The manager asked the police to intervene to investigate the

19  matter, but there was no evidence of an eviction.  In that case, the Court held that "the critical

20  determination is whether or not management had justifiably terminated Bautista's control of the

21  room through private acts of dominion" and focused on whether or not the hotel manager either

22  physically evicted the defendant or asked police to assist in an eviction.  *Id.* at 590.  The critical

23  issue to the Ninth Circuit was whether the hotel manager had developed *justifiable cause* to evict

24  Bautista.  In that case, neither a report that the credit card used to rent the room was stolen, nor

25  police intervention were deemed sufficient evidence that the hotel had justifiable cause for an

26  eviction. *Id.* at 591.  Here, as in *Bautista*, unconfirmed suspicions by the security staff that Mr.

CR- 07-559 JSW ; *United States v. Young*
Reply: Suppress Fruits of Unlawful Search                    4

1   Young had stolen items out of another room, coupled with a request for police intervention and a

2   lock out consistent with firearm security policy that does not provide for eviction is not a

3   sufficient showing that privacy rights of the occupant were extinguished.

4       Nor is *United States v. Cunag*, 386 F.3d 888 (9th Cir. 2004) "strikingly similar" to the

5   instant case.  In *Cunag*, the Ninth Circuit found that the defendant "procured this room through

6   deliberate and calculated fraud."  *Id*. at 894.  As such, the focus of that case was the fact that

7   Cunag was unlawfully present in the room to begin with.  *Id.* ("During the suppression hearing,

8   through documentary evidence, declarations of the hotel manager, and cross examination of

9   Cunag himself, the prosecution easily carried its burden to prove that Cunag was unlawfully in

10  the room").  This finding of unlawful presence was key to the Court's decision that Cunag's

11  expectation of privacy was extinguished.  Once this was determined, the Court then turned to the

12  second part of the test; management's "justifiable affirmative steps" to repossess the room.  *Id.* at

13  895.  In that case, the fact that the hotel locked Cunag out **and** registered a crime report with the

14  police was sufficient **after** determining Cunag's unlawful presence.  *Id*.  In contrast to *Cunag*,

15  here Mr. Young procured the room through honest means.  The subsequent electronic lockout of

16  Mr. Young was not an eviction, and it was not characterized as an eviction by any party present

17  at the Hilton hotel that evening.

18      **C.    In the Instant Case, the Government Cannot Meet Either Part of the Two-
              Part Test Outlined in the Aforementioned Caselaw**
19

20      Apparent in the aforementioned caselaw is a two part test that has developed in the Ninth

21  Circuit in connection with defendants' expectation of privacy in leased hotel rooms.  The first

22  part of the test concerns the defendant's lawful and timely occupancy of the room.  In cases

23  where the rental period has expired, such as *Dorais*, or where a hotel room is procured by fraud,

24  such as *Cunag*, the Circuit has held that eviction by the hotel management was justifiable and

25  lawful.  Once this is determined, the Court moves to the second part of the analysis; whether or

26  not management took sufficient affirmative steps to repossess the room.  In this vein, efforts by

1  the management to lock a lessee out of a room is only " the factor that *finally obliterates* any

2  cognizable expectation of privacy a lessee might have." *Cunag*, 386 F.3d at 895 (citing *Dorais*,

3  241 F.3d at 1129)(emphasis omitted).  In other words, "affirmative steps" taken by a hotel (such

4  as a lockout) *standing alone* do not suffice to eviscerate a tenant's expectation of privacy in a

5  hotel room.   Instead, the government must prove both 1.) unlawful and/or knowing expired

6  presence, and 2.) justifiable, affirmative steps taken to repossess the room.  Here, the government

7  can prove neither.

8         As argued above in Section IA and the Statement of Facts, the government has not made

9  any showing of either unlawful or untimely presence in the hotel room on the part of Mr. Young.

10  He clearly registered the room in his own name, paid for the room lawfully, and was well within

11  the rental period.  Nor has the government proven that any action on the part of Mr. Young that

12  justified an eviction, by virtue of the hotel's own weapon policy.  The government accordingly

13  cannot meet the first part of the *Cunag/Dorais* test.  With respect to the second part of the test,

14  the government's arguments with respect to the second part of the test are equally unavailing.

15  The government cited the lockout as the  "justifiable affirmative steps" that were taken by Hilton

16  staff to repossess the hotel room.  But the government's own evidence from the night of August

17  5, 2007 does not suggest that the act of locking out Mr. Young was done with an intent or

18  purpose of evicting him.  Mr. Young's belongings were not removed from the room.  Nor was

19  Mr. Young or Officer Koniaris informed that Mr. Young was evicted at any point.  *See, e.g.*,

20  Gov. Oppn, Exhibit 4 at  ¶7 (police officer involved in this case specifically refers to the hotel

21  room from which he seized the gun as "Young's hotel room.")

22          Interestingly, no individual other than the Director of Security, (Mr. Marweg) references

23  the alleged "eviction," and Mr. Marweg was not physically present at the hotel that evening.

24  After interacting with the government, Mr. Marweg now submits a declaration claiming that Mr.

25  Young was "evicted" through vague statements about an alleged policy that provides for eviction

26  of individuals "suspected of committed a crime."  *See* Oppn, Exhibit 2 ¶ 16.  This statement,

1   standing alone, cannot be accepted as credible evidence that Mr. Young was evicted from his

2   hotel room, particularly given the notable absence of the alleged policy to which Mr. Marweg

3   refers.

4   II.    **THE SECOND SEARCH BY THE HILTON SECURITY GUARDS, CALCULATED TO ENABLE
           THE POLICE OFFICER TO AVOID THE FOURTH AMENDMENT, VIOLATED MR. YOUNG'S**
5          **PRIVACY RIGHTS.**

6          **A.    The Security Guards Were State Actors at the Time of the Second Search**

7          The two part test in the Ninth Circuit to determine whether private actors are "acting as a

8   government instrument for Fourth Amendment purposes" is: "(1) whether the government knew

9   of an acquiesced in the intrusive conduct; and (2) whether the party performing the search

10  intended to assist law enforcement efforts or further his own ends." *United States v. Reed,* 15

11  F.3d 928, 931 (9th Cir. 1993) (citing *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982)).

12         Here, the government apparently concedes that the first part of the test weighs in favor of

13  a finding that Carr and Hicks were operating as state actors during the second search.  Officer

14  Koniaris both knew of and acquiesced in the security guards' second search of Mr. Young's hotel

15  room, as he was clearly standing outside of the room at the time of the search.  Moreover, Officer

16  Koniaris *admits* that he was specifically informed by his Sergeant that he "could not enter

17  Young's hotel room to search it but that Hilton security staff could enter a guest's room." Gov.

18  Oppn., Exhibit 4 ¶ 7.  Directly after that conversation, Koniaris had a conversation with the

19  security guards that led to the second search – strong evidence that the officers conducted the

20  second search in lieu of Koniaris because Koniaris believed that he could not.  There is no better

21  evidence that Koniaris enlisted the security guards to conduct a warrantless search on his behalf

22  than this.

23         With respect to the second factor, the government claims that "Hicks and Carr were

24  acting pursuant to Hilton's policy for the disposal of weapons found in guests rooms."  Gov.

25  Oppn at 12:12-13.   Quite simply, this is a factual assertion devoid of evidentiary support.  The

26  declarations submitted from Hicks or Carr do not state the guards' intent in connection with the

1   second search.  *See* Gov. Oppn, Exhibits 1 and 3.    Mr. Young accordingly moves to strike this

2   factual assertion in the government's papers, as it is not supported by affidavit or declaration in

3   accordance with Criminal Local Rule 47-2 (incorporating Civil Local Rule 7-5).

4       Absent actual evidence of the guards' intent, the government's assertions in this regard

5   are baseless and contradict the remaining evidence cited above; namely the strong indication of

6   the nexus between Officer Koniaris' discovery that "he couldn't search Young's hotel room" and

7   the subsequent actions by the hotel guards.  When the remaining evidence is considered,

8   including the alignment between Officer Koniaris and the security guards that night, the actions

9   of the security guards in connection with the second search meet the *Reed* test for state action.

10      **B.    *Jacobsen* Does Not and Should Not Apply to Searches of Private Residences**

11      The government also argues that regardless of the characterization of the second search,

12  the preceding private search by the security guards eviscerated Mr. Young's expectation of

13  privacy in the hotel room.  In support of this proposition, the government boldly asserts that "this

14  case is controlled by *United States v. Jacobsen*, 466 U.S. 109 (1984)."  Gov. Oppn. at 9:25.

15  Importantly, the government misses a critical point; the Ninth Circuit has yet to extend the

16  holding of *Jacobsen* to private residences, including hotel rooms.  Indeed, the one Court of

17  Appeals to consider this very issue flatly rejected the government's invitation to extend *Jacobsen*

18  to cases in which a hotel employee conducted an initial search that was followed by a warrantless

19  entry by police:

20          Unlike the package in Jacobson, however, which 'contained nothing but
            contraband', Allen's motel room was a temporary abode containing personal
21          possessions.  Allen had a legitimate and significant privacy interest in the contents
            of his motel room, and this privacy interest was not breached in its entirety merely
22          because the motel manager viewed some of those contents.  *Jacobsen*, which
            measured the scope of a private search of a mail package, the entire contents of
23          which were obvious, is distinguishable on its facts; this Court is unwilling to
            extend the holding in Jacobsen to cases involving private searches of residences.
24

25      *United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997).  Some of the cases cited by the

26  government are either inapposite, or do not involve searches of private residences. *See, e.g.,*

1   *United States v. Mithun*, 933 F.2d 631, 634 (8th Cir. 1991)(search of a car).   The one private

2   residence case cited by the government, *United States v. Miller*, 152 F.3d 813 (8th Cir. 1998)

3   strictly limits the application of *Jacobsen* to private residence cases to only have effect "when the

4   private search was reasonably foreseeable", and notes that its holding is in conflict with the *Allen*

5   decision from the Sixth Circuit.  *Id.* at 816.

6        The government's broad contention that *Jacobsen* applies to the instant case is incorrect;

7   it appears that this issue is one of first impression in the Ninth Circuit.  Mr. Young urges this

8   Court to adopt the sound reasoning of the Sixth Circuit on this issue, and to decline to extend

9   *Jacobsen* to cases involving the subsequent warrantless searches of private residences, including

10  hotel rooms.  Accordingly, the subsequent search by the security guards acting as proxy state

11  agents violated Mr. Young's Fourth Amendment rights.

12  **III.    No Other Valid Exception to the Warrant Requirement Exists in this Case.**

13        **A.    Plain View**

14        The government's opposition grossly misconstrues the plain view doctrine by ignoring

15  the fact that Officer Koniaris made a warrantless entry into a constitutionally protected area to

16  seize evidence.  The fact that Officer Koniaris was entitled to stand in the hallway and saw

17  evidence "highly incriminating to Young" is of no import, because he had no lawful cause to

18  enter the hotel room to effect the seizure.  "Not only must the officer be located in a place from

19  which the object can be plainly seen, but he or she *must also have a lawful right of access to the*

20  *object itself.*"  *Horton v. California*, 496 U.S. 128, 136 (1990)(citations omitted)(emphasis

21  added).

22        Here, Officer Koniaris had no warrant and no lawful reason to enter the hotel room.  The

23  incriminating nature of the evidence and the probable cause calculus referenced by the

24  government in its opposition is irrelevant to this determination.  Plain view cannot, standing

25  alone, justify a warrantless search absent exigent circumstances or another valid exception to the

26  warrant requirement.  *See Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971).   The

1    government's argument on plain view is in direct contradiction with Supreme Court precedent,

2    and should be disregarded.

3           **B.     Inevitable Discovery**

4           The government's final arguments in connection with the inevitable discovery doctrine

5    must fail, as they are based on pure speculation rather than solid fact.  It is well established that

6    the means by which the hypothetical inevitable discovery would have occurred must parallel, not

7    follow, the primary illegality.  *See United States v. Echegoyen*, 799 F.2d 1271, 1280, n. 7 (9th Cir.

8    1986).  "This court has never applied the inevitable discovery doctrine so as to excuse the failure

9    to obtain a search warrant where the police had probable cause but simply failed to obtain a

10   warrant."  *United States v. Mejia*, 69 F.3d 309, 320 (9th Cir. 1995)**.**  Absent the warrantless

11   second search and unlawful seizure of the firearm, as well as the unlawful seizure and detention

12   of Mr. Young, there is no evidence before the Court that this firearm would have been located in

13   an alternate, parallel investigation that did not involve the actors and players involved in the

14   second search of Mr. Young's hotel room.

15          Here, the government contends, (again absent factual support) that "it is inconceivable

16   that [the guards] would have given the gun back to Young once they believed that he had robbed

17   the room of a fellow guest."   This statement belies the policy of the Hilton hotel with respect to

18   weapons and firearms, in which security is directed to provide a secure location for storing

19   firearms as a courtesy for its guests.  Moreover, had the police not seized the firearm in question

20   on August 5, 2007, it is unclear that Mr. Young would not have simply retrieved the firearm from

21   security and left the hotel; or removed it in accordance with the gun policy and subsequently

22   returned to the hotel to sleep.  The hotel could have questioned Mr. Young, and upon realizing he

23   did not possess any of the stolen items, allowed him to remain there absent the gun.  In addition,

24   in contrast to the government's assertion, there was no evidence whatsoever at the time of the

25   search that the gun had a connection to unlawful activity.  In sum, the only support the

26   government sets forth in connection with this theory is speculation, which does not carry the day.

CR- 07-559 JSW; *United States v. Young*
Reply: Suppress Fruits of Unlawful Search                    10

1  The inevitable discovery doctrine does not cure the constitutional infirmities in this case.

2

3                                    **CONCLUSION**

4        For the aforementioned reasons, Mr. Young respectfully requests this Court to suppress

5  the fruits of the unlawful search and seizure on August 6, 2007, including the firearm and each of

6  his statements to police.   Mr. Young respectfully requests the Court to grant the motion on the

7  papers.   In the alternative, Mr. Young requests the Court to order an evidentiary hearing in the

8  event the Court determines that further factual findings are necessary.

9

10  Dated:          September 27, 2007

11

12                                    Respectfully submitted,

13                                    BARRY J. PORTMAN
                                      Federal Public Defender
14
                                             /S/
15
                                      ELIZABETH M. FALK
16                                    Assistant Federal Public Defender

17

18

19

20

21

22

23

24

25

26